### UNITED STATES  DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**JONATHAN MICHAEL RUIZ**                         **CIVIL ACTION**

**VERSUS**                                                        **NO.   13-5406**

**JAMES LeBLANC, ROBERT TANNER, ET. AL**      **SECTION: "C" (4)**

<u>**REPORT AND RECOMMENDATION**</u>

This matter was referred to the United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

**I.      <u>Factual Summary</u>**

The plaintiff, Jonathan Ruiz ("Ruiz"), a convicted sex offender, is incarcerated in B.B. "Sixty" Rayburn Correctional Center ("RCC") in Angie, Louisiana.  He filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants; James LeBlanc, Secretary of the Department of Corrections ("Secretary LeBlanc") in his official and individual capacity; Warden Robert Tanner of the RCC ("Warden Tanner") in his official and individual capacity; Lieutenant Colonel Billy Anderson of the RCC ("Lieutenant Anderson") in his official and individual capacity as the Chairman of the Disciplinary Board; Don Wheat, an unknown titled-employee of the RCC, who Ruiz alleges is legally responsible for providing fair, proper, impartial

and meaningful decisions of the Disciplinary Board ("Wheat") in his official and individual capacity; and Lorell Morris, an unknown titled employee of the RCC, [1] who Ruiz alleges is legally responsible for providing fair, proper, impartial and meaningful decisions of the Disciplinary Board ("Morris) in his official and individual capacity.[2]

###   A.    Disciplinary Charge One - The Fight

Under a broad reading of Ruiz's complaint, he alleges that all the defendants are employed with RCC. He also alleges that each of the defendants were aware that on February 21, 2012, at about 7:00 p.m., while he was in a shared recreation room, he was confronted by an "offender, named Carl Chester ("Chester").["3] He alleges that Chester, while in the view of a correctional officer, and on camera, punched Ruiz harshly on the side of his head, causing him to fall to the ground.[4] Ruiz further contends that Chester continued to attack him while he remained defenselessly on the ground, and although he attempted to deflect Chester's strikes, Chester continued to punch him in the body and head.[5] In an effort to protect himself and reduce his injuries, Ruiz allegedly grabbed Chester around the legs, but did not hit him.[6] After the incident, Ruiz alleges that he and

---

[1]Ruiz originally named "D.M. Wheat" and an "unidentified party" in his initial complaint with the Court. *See* R. Doc. 3. On December 12, 2013, Ruiz filed an Amended Complaint into the record without asking for leave. *See* Rec. Doc. 13. He did not amend the factual allegations in the complaint but clarified the identity of "D.M. Wheat" to be "Don Wheat" and the "unidentified party" as "Lorell Morris" the other member of the Disciplinary Board who found him guilty of policy violations. *See* Rec. Doc. 13, p. 3-4, ¶¶ 4-8. Because Ruiz amended his complaint to include the names of these defendants, the Clerk terminated "D.M. Wheat" and the "unidentified party" as defendants in this matter.

[2]*See* Rec. Doc. 13, p. 3-4, ¶¶ 4-8.

[3]*See* Rec. Doc. 13, p. 6, ¶ 22.

[4]*Id.* at ¶ 23.

[5]*Id.* at ¶¶ 24-25.

[6]*Id.* at ¶¶ 26-28.

Chester were cuffed, escorted to the infirmary, examined by the medical staff and placed in administrative segregation.[7]

Thereafter, Ruiz contends that as standard protocol, both he and Chester received a disciplinary charge, or a "Rule Violation Report ("RVR"), for fighting in violation of Rule 10 of the Louisiana Department of Public Safety and Corrections rule book, as the altercation between them was recorded on video and would be used as evidence.[8] He alleges that his disciplinary hearing, which took place by video conference, was conducted by Lieutenant Anderson, in his capacity as the acting chairman of the disciplinary board, and Defendant Morris, as an acting member of the Disciplinary Board.[9] He alleges that during the hearing he raised self-defense as a complete defense to the charge, alleging that he was defending himself and not fighting.[10]

Ruiz alleges that Lieutenant Anderson ultimately concluded that once Chester took a step away from the fight, he should have concluded that the fight was over.[11] Because Ruiz allegedly re-engaged the fight and grabbed Chester's legs, Lieutenant Anderson found that he participated in the fight, and was guilty of the alleged disciplinary violations.[12]

As a result, on February 22, 2012, Ruiz was allegedly charged $8.00 in restitution, imposed four weeks loss of yard and recreation privileges, and four weeks of loss of use of TV, radio and CD

---

[7]*Id.* at ¶33.

[8]*See* Rec. Doc. 13, p. 7, ¶34.

[9]*Id.* at ¶ 35.

[10]*Id.* at ¶ 37.

[11]*Id.* at ¶ 44.

[12]*Id.* at ¶ 46.

player privileges.[13] Ruiz alleges that the February 22, 2012 , conviction has been used to enhance the sentence of another RVR / Disciplinary Charge adjudicated on April 30, 2012, and that this conviction is also being used by prison employees regarding parole release, job, educational eligibilities, risk review and Sora[14] (sic) determinations.[15]

Ruiz allegedly appealed the conviction on February 29, 2012. However, this appeal was denied by Warden Tanner and the First Step Disciplinary Board Appeal Decider on April 10, 2012.[16] Ruiz alleges that he appealed the conviction to the Secretary, and that he did not receive the Secretary's decision until August 2012. However, Ruiz does not allege whether the Secretary affirmed or reversed his conviction, and although he alleges that it is attached as "exhibit C" it is not attached to the complaint.[17]

### B.    Disciplinary Charge Two-Sexually Explicit Material

On May 18, 2012, Ruiz alleges that his Maximum Custody Extended Lockdown Cell was searched by Sergeant Tynes ("Tynes").[18] Tynes allegedly confiscated some of Ruiz's personal property; consisting of six photographs, three magazines, two drawings and a library book belonging to RCC. Later that same day, Ruiz alleges that Tynes filed an RVR / Disciplinary Charge against

---

[13] *Id.* at ¶ 50.

[14] It is unclear from the record what the term Sora means. However, the spelling is taken from his complaint.

[15] *Id.* at ¶¶ 53-54.

[16] *Id.* at ¶¶ 55-56.

[17] *Id.* at ¶57.

[18] *Id.* at p. 11, ¶ 58.

him for violating Rules 1 and 17 of the Louisiana Department of Public Safety and Corrections rule book, for possession of unauthorized items which constitute contraband. [19]

Ruiz complains that the items he had in his possession do not meet the prison policies definition of contraband, nor were they detrimental to security. He also alleges that the prison has decided to disallow all maximum custody offenders from receiving packages or periodicals, but that he was not aware of a policy that includes packages or periodicals as contraband.[20] Ruiz's complaint alleges that he had a nude drawing in his possession. He alleges that possessing such a picture is common throughout the prison. He also alleges that other inmates are allowed to have periodicals and nude pictures and that this policy is selectively enforced.

Ruiz alleges that his disciplinary hearing, which took place on May 21, 2012, was conducted by Lieutenant Anderson, in his capacity as the acting chairman of the disciplinary board, and Defendant Wheat, as an acting member of the Disciplinary Board.[21] Ruiz contends that during the disciplinary hearing, he presented evidence that the items which were seized do not meet the definition of contraband, and do not indicate that he is a sex offender. He contends that he adequately established that the nude drawing in his possession was a work in progress, and was not obscene or sexually explicit.[22] As such, Ruiz alleges that he requested that the nude drawing be excluded as evidence, because he was not aware that it would be considered contraband, and prejudice him during the disciplinary proceeding, but Lieutenant Anderson allegedly denied this request.

---

[19]*Id.* at ¶ 59-60.

[20]*Id.* at ¶¶ 62-64.

[21]*Id.* at ¶ 95.

[22]*Id.* at ¶ 97.

Ruiz contends that the nude drawing should have been handled pursuant to the disallowance procedures, as the drawing seized from him had not allegedly been declared as prohibited, unauthorized contraband.[23] However, Ruiz contends that he was told by Lieutenant Anderson that due to his prior conviction as a sex offender, his possession of the nude drawing constituted a "threat."[24] Ruiz contends that this explanation was not sufficient, as it did not explain to him why his possession constituted a security threat, or was detrimental to security.[25] As such, Ruiz contends that Lieutenant Anderson erred when he concluded that possession of these items violated prison policy.

Ruiz further alleges that Lieutenant Anderson and Wheat did not demonstrate which rule "advised sex offenders that . . . the [possession of] nude pictures . . . [] would constitute contraband" so as to put potential offenders on notice. [26] As such, Ruiz alleges that the disciplinary board was prejudiced.

Ruiz was ultimately found guilty of violating Rule 1, and sentenced to ten (10) days  of isolation.[27] He also alleges that this conviction / RVR is being used to justify his retention in extended lockdown and maybe used as a factor to enhance future RVR proceedings, as probative evidence in future proceedings, or as a factor to increase his assessment score.[28]

---

[23]*Id.* at p. 19, ¶105.

[24]*Id.* at ¶ 106.

[25]*Id.* at ¶ 108.

[26]*Id.* at ¶ 118.

[27]*Id.* at ¶ 126.

[28]*Id.* at p. 24, ¶¶ 127-130.

Ruiz sought review of his conviction and sentence. First, he appealed to Warden Tanner's office, where his conviction was affirmed on June 21, 2012.[29]  He then appealed Warden Tanner's decision affirming his conviction to the Secretary on June 22, 2012, who allegedly affirmed the conviction and sentence on September 28, 2012.[30] As such, Ruiz filed the instant action on August 12, 2013.

Ruiz's complaint seeks relief from the actions of Lieutenant Anderson and Morris, for allegedly refusing to properly apply Ruiz's evidence of self-defense as a complete defense of his February 21, 2012, disciplinary charge.[31] As for his May 18, 2012 conviction, he alleges that Lieutenant Anderson and Morris' use of his prior crimes during the hearing, and misinterpretation of disciplinary rules violated his due process and equal protection rights guaranteed by the Fourteenth Amendment.

He also contends that Warden Tanner and Secretary LeBlanc violated his Fourteenth Amendment Due Process rights by affirming the February 22, 2012, and May 18, 2012 disciplinary decisions and sentences. Ruiz seeks declaratory and injunctive relief, compensatory and punitive damages, as well as restoration of the medical exam fee he paid after the February 21, 2012 decision.

## II.    Standards of Review for Frivolousness

Title 28 U.S.C. § 1915A and Title 42 U.S.C. § 1997e(c)(1) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous or otherwise fail to state a claim for which relief can be granted. The Court has broad

---

[29]*Id.* at ¶¶ 140-141.

[30]*Id.* at ¶¶ 141-142.

[31]*Id.* at p. 26, ¶¶ 143-144.

discretion in determining the frivolous nature of the complaint.  *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).  A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

## III.   Analysis

Ruiz's complaint seeks relief from the actions of Lieutenant Anderson, Morris and Wheat, in their roles as members of the Disciplinary Board, for allegedly violating his due process rights. Ruiz first alleges that Lieutenant Anderson and Morris violated his due process rights and erred when they did not apply Ruiz's evidence of self-defense as a complete defense to his February 21, 2012, disciplinary charge, because he was physically attacked.[32]

---

[32]*Id.* at p. 26, ¶¶ 143-144.

As for his May 18, 2012 conviction, Ruiz alleges that Lieutenant Anderson and Wheat's use of his prior crimes during his disciplinary hearing, the misinterpretation of disciplinary rules, and his lack of notice that as a sex offender possessing nude drawings, magazines or pictures would constitute contraband, violated his due process rights guaranteed by the Fourteenth Amendment. Therefore, Ruiz contends that the Board's decision is in error and should be reversed.

Ruiz alleges broadly that his constitutional rights were violated by the defendants failure to interpret his self-defense claim in his February 21, 2012 disciplinary proceeding; and again in his May 18, 2012 disciplinary proceeding when defendants wrongly introduced evidence, and improperly interpreted Louisiana Department of Public Safety and Corrections rules. As such, he seeks reversal and expungement of the board's findings. Ruiz's claims, however, are frivolous and fail to state a claim on which relief may be granted, as challenges to disciplinary proceedings are barred from federal review by *Sandin v. Connor,* 515 U.S. 472 (1995).

To resolve whether a prisoner has a due process claim relating to prison disciplinary action, the Court must first determine whether a constitutionally protected liberty interest exists. *Id.* at 481-83. Liberty interests protected by the Fourteenth Amendment may arise from two sources-the Due Process Clause itself and the laws of the States." *Hewitt v. Helms,* 459 U.S. 460, 466 (1983). In *Sandin*, the Supreme Court recognized that although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484 (citations omitted). Thus, in Sandin, where a prisoner was placed in disciplinary segregation for 30 days and the discipline did not inevitably affect the duration of his sentence, the

9

Court held that due process does not require that a prisoner be afforded the procedural mechanisms previously prescribed in *Wolff v. McDonnell*, 418 U.S. 539 (1974) and *Hewitt*, 459 U.S. at 460.

Similarly, the denial of other privileges, like access to personal items and other privileges, like those raised in the instant case, is not a "typical and significant hardship on the inmate in relation to the ordinary incidents of prison life," and is within the expected contours of plaintiff's criminal sentence. *Sandin*, 515 U.S. at 484, 486 n. 9; *Smith v. Bingham*, 914 F.2d 740, 742 (5th Cir.1990) ("A prisoner does not retain constitutional rights that are inconsistent with the legitimate penological objectives of the correction system.") Accordingly, no substantive due process deprivation arose from Ruiz's disciplinary proceedings or the review thereof. He also was not entitled to any particular procedures before he was denied other privileges as a result of his disciplinary conviction. Thus, his claims for prospective injunctive relief and declaratory relief for the alleged violations of Fourteenth Amendment due process rights or for monetary damages arising from his disciplinary proceedings fail to state a claim for which relief can be granted. He has failed to establish violation of those rights by the defendants either in their official or their individual capacities.

## IV.    **Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Ruiz's § 1983 claims against the defendants, James LeBlanc,  Robert Tanner,  Billy Anderson, Don Wheat and Lorell Morris, be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e) and § 1915A.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after

being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[33]

New Orleans, Louisiana, this 30th day of January, 2014.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[33]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

11